# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GROWTH ENERGY,<br>701 8th Street NW, Suite 450<br>Washington, DC 20001<br><br>        Plaintiff,<br><br>   v.<br><br>MICHAEL S. REGAN, in his official capacity as Administrator,<br>U.S. Environmental Protection Agency,<br>1200 Pennsylvania Avenue NW<br>Washington, DC 20460<br><br>and<br><br>ENVIRONMENTAL PROTECTION AGENCY,<br>1200 Pennsylvania Avenue NW<br>Washington, DC 20460<br><br>        Defendants. | Civil Action No. 1:22-cv-00347 |

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Growth Energy brings this action to compel Defendants, the U.S. Environmental Protection Agency and the Honorable Michael S. Regan, in his official capacity as Administrator of the U.S. Environmental Protection Agency (collectively "EPA"), to establish renewable fuel obligations for the 2021 and 2022 compliance years. Continuing its multi-year trend of disregarding statutory deadlines, EPA has ignored the nondiscretionary duty established by Clean Air Act ("CAA") Section 211(o)(3)(B), 42 U.S.C. § 7545(o)(3)(B), to promulgate the 2021 Renewable Fuel Standards ("RFS") obligations on or before November 30, 2020, and to promulgate the 2022 RFS obligations on or before November 30, 2021. Plaintiff hereby seeks an

1

Case 1:22-cv-00347-RCL   Document 1   Filed 02/08/22   Page 2 of 11

injunction requiring EPA promptly to promulgate renewable fuel obligations for 2021 and 2022. In support, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604(a)(2), which authorizes citizen suits concerning EPA's failure to perform a nondiscretionary act or duty under the CAA. Section 7604(a) grants this Court jurisdiction to order EPA to perform such duty. In addition, this Court has jurisdiction over this action and over the parties pursuant to 28 U.S.C. §§ 1331 and 1361. The relief requested is authorized under 42 U.S.C. § 7604 and 28 U.S.C. §§ 2201, 2202, and 1361.

2. Venue in this Court is proper under 28 U.S.C. § 1391(e)(1) because Defendants are principally located in the District of Columbia, and a substantial part, if not all, of the events or omissions giving rise to the claims asserted herein arose in this District.

## PARTIES

3. Plaintiff is a national biofuel trade association. Plaintiff represents producers and supporters of ethanol who are working to bring consumers better choices at the fuel pump, grow America's economy, and improve the environment for future generations. Plaintiff's membership represents nearly half of all American ethanol plants, many of the largest and most prominent fuel retailers in the country, and leading businesses that support the ethanol industry.

4. Plaintiff represents its members in judicial, legislative, and administrative forums. In particular, Plaintiff routinely comments on EPA rulemaking proposals to implement the RFS program, and has participated in litigation involving several of EPA's RFS regulations since the program's inception.

5. Plaintiff is a "person" as defined in the CAA. See 42 U.S.C. § 7602(e).

2

6. Defendant Michael S. Regan is the Administrator of the EPA. The Administrator is charged with implementation and enforcement of the CAA, including the CAA's nondiscretionary duty to timely determine and promulgate renewable fuel obligations on an annual basis.

7. Defendant EPA is an executive agency of the federal government charged with implementing the CAA's RFS program.

## STATUTORY AND REGULATORY BACKGROUND

8. In the Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594, Congress amended the CAA to establish the RFS program to increase the quantity of renewable fuels used in gasoline in the United States. Congress expanded that program in 2007 with the Energy Independence and Security Act of 2007, Pub. L. No. 110-140, 121 Stat. 142. That law increased the overall annual volumes of renewable fuel required through the year 2022 for four different categories of renewable fuel: renewable fuel, advanced biofuel, biomass-based diesel and cellulosic biofuel. These categories are "nested": biomass-based diesel and cellulosic biofuel are types of advanced biofuel, and advanced biofuel is a type of renewable fuel.

9. The statute specifies minimum, or "applicable," annual volume requirements for renewable fuel, advanced biofuel, and cellulosic biofuel through 2022, and applicable volume requirements for biomass-based diesel for each year through 2012. 42 U.S.C. § 7545(o)(2)(B)(i). Congress's purpose in requiring EPA to establish such annual volumes was "to force the market to create ways to produce and use greater and greater volumes of renewable fuel each year." *Americans for Clean Energy v. EPA*, 864 F.3d 691, 710 (D.C. Cir. 2017).

10. Because the statute's applicable volume requirements increase rapidly over time, Congress equipped EPA with several tools to alter the requirements listed in the statute based on

actual conditions in the marketplace and the national economy. These tools include two provisions requiring or permitting EPA to reduce, or waive, certain requirements. *Id.* § 7454(o)(7).

11.     To enable obligated parties to comply with the national volume requirements, EPA must promulgate annual "regulations to ensure that transportation fuel sold or introduced into commerce in the United States … , on an annual average basis, contains the applicable volume," as adjusted through the waiver process, "of renewable fuel, advanced biofuel, cellulosic biofuel, and biomass-based diesel." *Id.* § 7545(o)(2)(A)(i).  These regulations specify "applicable percentages," or the "renewable fuel obligation," that each obligated part must meet. *Id.* § 7545(o)(3).

12.     Each year, EPA must "determine and publish" the renewable fuel obligation "[n]ot later than November 30" of the preceding compliance year. *Id.* § 7545(o)(3)(B)(i).

13.     Until EPA has fulfilled its obligations for a given year under § 7545(o)(3)(B) and, if applicable, under § 7545(o)(2)(B)(ii), obligated parties may not know their precise obligations and renewable fuel producers may not know the level of demand.

14.     The deadlines Congress set for EPA to establish renewable fuel volumes and obligations are intended to inform obligated parties and renewable fuel producers, prior to each compliance year, of the upcoming RFS obligations so they can plan accordingly. As EPA indicated when it promulgated regulations for the expanded RFS program in 2007, "[g]iven the implications of these standards and the necessary judgment that can[no]t be reduced to a formula akin to the [previous RFS program] regulations, we believe it is appropriate to set standards through a notice-and-comment rulemaking process. Thus, for future standards, we intend to issue [a Notice of Proposed Rulemaking] by summer and a final rule by November 30 of each year in

order to determine the appropriate standards applicable in the following year." *Regulation of Fuels and Fuel Additives: Changes to Renewable Fuel Standard Program*, 75 Fed. Reg. 14,670, 14,675 (Mar. 26, 2010) (2010 Regulations).

## FACTUAL BACKGROUND

15. EPA has repeatedly failed to meet the November 30 statutory deadline for promulgating annual RFS regulations. For example:

- EPA did not promulgate the final 2010 RFS regulations until February 3, 2010, over three months late and into the compliance year, *see 2010 Regulations*, 75 Fed. Reg. 14,670;

- EPA did not promulgate the final 2012 RFS regulations until December 22, 2011, more than three weeks late, *see 2012 Standards for the Renewable Fuel Standard Program: Final Rulemaking*, 77 Fed. Reg. 1,320 (Jan. 9, 2012);

- EPA did not promulgate the final 2013 RFS regulations until August 6, 2013, 247 days late and nearly two-thirds of the way through the compliance year, *see Regulation of Fuels and Fuel Additives: 2013 Renewable Fuel Standards*, 78 Fed. Reg. 49,794 (Aug. 15, 2013);

- EPA did not promulgate the final 2014 RFS regulations until November 30, 2015, two years late and fully past the compliance year, *see Final Renewable Fuel Standards for 2014, 2015 and 2016, and the Biomass-Based Diesel Volume for 2017*, 80 Fed. Reg. 77,420 (Dec. 14, 2015);

- EPA did not promulgate the final 2015 RFS regulations until November 30, 2015, a year late and with only one month of the compliance year remaining, *see id*.

16. Under 42 U.S.C. § 7545(o)(3)(B)(i), EPA was obligated to promulgate the 2021 RFS regulations on or before November 30, 2020, and was obligated to promulgate the 2022 RFS regulations on or before November 30, 2021.

17. EPA has not promulgated final RFS rules for 2021 or 2022. EPA noticed *proposed* rulemaking to establish the 2021 and 2022 RFS regulations on December 7, 2021. *See Renewable Fuel Standard (RFS) Program: RFS Annual Rules*, https://www.epa.gov/sites/default/files/2021-12/documents/rfs-2020-2021-2022-rvo-standards-nprm-2021-12-07.pdf; 86 Fed. Reg. 72,436 (Dec. 21, 2021) (official publication in Federal Register). EPA noticed this *proposed* rulemaking over a year after when Defendants were required by statute to promulgate a *final* rule for 2021, and after when Defendants were required to promulgate a *final* rule for 2022.

18. EPA has thus failed to meet the statutory deadlines for promulgating the 2021 and 2022 RFS regulations. These failures violate the clear, mandatory duties and deadlines imposed on EPA by CAA Section 211(o), 42 U.S.C. § 7545(o) and harm Plaintiff's members, as described below.

## INJURIES RESULTING FROM EPA'S FAILURE TO ACT

19. Plaintiff's members are biofuels producers whose fuel products are purchased by obligated parties to comply annually with their renewable volume obligations set under the RFS program, as described above. EPA's regulations setting applicable renewable fuel volumes directly dictate the level of national demand for renewable fuels—including ethanol, biomass-based diesel, and cellulosic biofuels—produced by Plaintiff's members.

20. Plaintiff's members have therefore suffered and continue to suffer economic injury due to EPA's failure to timely promulgate the final 2021 and 2022 RFS fuel obligations.

EPA's delay in taking those actions negates any ability for Plaintiff's members to plan and, if necessary, adjust their operations to assure appropriate levels of production to match obligated parties' compliance obligations with annual RFS requirements. This uncertainty and inability to plan future production directly affects Plaintiff's members' bottom lines.

21. Specifically, since 2021 is now over, Plaintiff's members are unable to change their production levels and therefore were denied the ability to accurately predict the demand for their products in 2021, contrary to the requirements of the RFS. Given EPA's now inevitable delay in promulgating the 2022 RFS obligations until well into 2022 (at best), Plaintiff's members will be similarly constrained with respect to at least a substantial portion of 2022.

22. Additionally, when EPA fails to meet its statutory deadlines, it often retroactively sets standards for the missed periods to match the actual levels of renewable fuel use that occurred in the absence of the RFS's market-forcing standards. *See Final Renewable Fuel Standards for 2014, 2015 and 2016, and the Biomass-Based Diesel Volume for 2017*, 80 Fed. Reg. 77,420, 77,426-27 (Dec. 14, 2015) (after missing deadlines, retroactively setting 2014 and 2015 obligations to levels of actual use).  Indeed, EPA has proposed to do precisely that for 2021, *Renewable Fuel Standard (RFS) Program: RFS Annual Rules*, 86 Fed. Reg. 72,436, 72,438-39 (Dec. 21, 2021), and EPA's past practice suggests it could do the same for 2022. This approach causes direct monetary harm to Plaintiff's members by lowering the ultimate demand for the renewable fuels they produce in comparison to what would have been demanded had the RFS's standards been timely adopted to fulfill their core purpose of spurring increased renewable fuel use.

23. And the effects of these delays will be felt by Plaintiff's members in future years. As EPA has recognized, the actual market effects of the RFS standards and actual compliance

activity are mediated through the "bank" of carryover RINs, that is, leftover compliance credits from a prior year that are available for compliance in a future year.

24. These injuries are the direct result of EPA's failure to timely comply with the statutory deadlines prescribed by the CAA.

25. These injuries are irreparable. Once an opportunity to plan supply or to sell renewable has passed, it cannot be regained; the transportation fuel will have already been sold and used by the consumer without Plaintiff's renewable fuel. And Plaintiff cannot obtain compensatory damages from EPA for its unlawful actions.

## **NOTICE**

26. Sixty days prior to bringing an action "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator," 42 U.S.C. § 7604(a)(2), the plaintiff must give notice to the Administrator, *id.* § 7604(b)(2).

27. On December 1, 2020, Plaintiff provided notice of its intent to sue Defendants pursuant to Section 304(b)(2) of the CAA, 42 U.S.C. § 7604(b)(2), and 40 C.F.R. part 54 to enforce EPA's nondiscretionary duty to promulgate the 2021 RFS regulations on or before November 30, 2020. A copy of this letter is attached hereto as Exhibit A.

28. On November 2, 2021, Plaintiff provided notice of its intent to sue Defendants pursuant to Section 304(b)(2) of the CAA, 42 U.S.C. § 7604(b)(2), and 40 C.F.R. part 54 to enforce EPA's nondiscretionary duty to promulgate the 2022 regulations on or before November 30, 2021. A copy of this letter is attached hereto as Exhibit B.

29. On December 1, 2021, Plaintiff provided further notice of its intent to sue Defendants pursuant to Section 304(b)(2) of the CAA, 42 U.S.C. § 7604(b)(2), and 40 C.F.R.

part 54 to enforce EPA's nondiscretionary duty to promulgate the 2022 regulations on or before November 30, 2021. A copy of this letter is attached hereto as Exhibit C.

30. EPA timely received Plaintiff's notice letters, as demonstrated by the fact that EPA posted copies on its webpage entitled "Notices of Intent to Sue the U.S. Environmental Protection Agency (EPA)," https://www.epa.gov/ogc/notices-intent-sue-us-environmental-protection-agency-epa.

31. More than sixty days have passed since Plaintiff served these notice letters on EPA regarding EPA's failure to meet statutory deadlines for promulgating the 2021 and 2022 RFS regulations.

## CLAIMS FOR RELIEF

### COUNT I: Failure to Perform a Nondiscretionary Act or Duty to Promulgate the 2021 RFS Regulations

32. CAA Section 211(o)(3)(B)(i), 42 U.S.C. § 7545(o)(3)(B)(i), requires EPA to determine, and publish in the Federal Register, the renewable fuel obligations for a given calendar year "[n]ot later than November 30 of" the preceding calendar year. 42 U.S.C. § 7545(o)(3)(B)(i).

33. For calendar year 2021, EPA was required to determine and publish the renewable fuel obligations by November 30, 2020.

34. EPA failed to determine and publish the renewable fuel obligations for 2021 by November 30, 2020—and still has not done so.

35. EPA's failure to timely promulgate the 2021 RFS regulations in accordance with 42 U.S.C. § 7545(o) constitutes a failure "to perform any act or duty . . . which is not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2).

36. EPA's failure has harmed and continues to harm Plaintiff's members by impairing their ability to meaningfully plan their production and by reducing the demand for their products.

**COUNT II: Failure to Perform a Nondiscretionary Act or Duty
to Promulgate the 2022 RFS Regulations**

37. CAA Section 211(o)(3)(B)(i), 42 U.S.C. § 7545(o)(3)(B)(i), requires EPA to determine, and publish in the Federal Register, the renewable fuel obligations for a given calendar year "[n]ot later than November 30 of" the preceding calendar year. 42 U.S.C. § 7545(o)(3)(B)(i).

38. For calendar year 2022, EPA was required to determine and publish the renewable fuel obligations by November 30, 2021.

39. EPA failed to determine and publish the renewable fuel obligations for 2022 by November 30, 2021—and still has not done so.

40. EPA's failure to timely promulgate the 2022 RFS regulations in accordance with 42 U.S.C. § 7545(o) constitutes a failure "to perform any act or duty . . . which is not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2).

41. EPA's failure has harmed and continues to harm Plaintiff's members by impairing their ability to meaningfully plan their production and by reducing the demand for their products.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Declare that Defendants have failed to perform nondiscretionary acts or duties under 42 U.S.C. § 7545(o) to promulgate the 2021 and 2022 RFS regulations;

B. Order EPA to promulgate final 2021 and 2022 RFS regulations promptly under 42 U.S.C. § 7545(*o*), pursuant to an expeditious deadline established by this Court;

  C. Retain jurisdiction to ensure compliance with the Court's order;

  D. Award Plaintiff the costs of its participation in this action, including reasonable attorneys' fees; and

  E. Grant such other relief as the Court deems just and proper.

February 8, 2022           Respectfully submitted,

                   /s/ Seth P. Waxman

                   Seth P. Waxman (D.C. Bar No. 257337)
                   David M. Lehn (D.C. Bar No. 496847)
                   Wilmer Cutler Pickering Hale and Dorr LLP
                   1875 Pennsylvania Avenue, NW
                   Washington, DC 20006
                   (202) 663-6800
                   seth.waxman@wilmerhale.com

                   *Counsel for Growth Energy*